UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL FAY ANN CEJA,<br><br>          Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>          Defendant. | Case No. 1:23-cv-01457-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 15). |

      This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her applications for disability and supplemental security income benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 10).

      Plaintiff argues as follows: "The physical RFC assessed by the ALJ is unsupported by substantial evidence." (ECF No. 15, p. 17).

      Having reviewed the record, administrative transcript, parties' briefs, and the applicable law, the Court finds as follows.

## I. ANALYSIS

Plaintiff argues that "[t]he physical RFC assessed by the ALJ is unsupported by substantial evidence." (ECF No. 15, p. 17). She contends that the RFC is deficient because "the ALJ erroneously failed to include any restrictions in [her] ability to meet the competitive demands of maintaining regular attendance" because of symptoms caused by her fibromyalgia. (*Id.* at 18). More specifically, "the ALJ failed to offer legitimate reasons for discounting [her] subjective complaints concerning the frequency and duration of episodic [fibromyalgia-related] flare ups." (*Id.*). Defendant argues that the ALJ reasonably discounted Plaintiff's subjective complaints and thus this Court should affirm the ALJ's decision. (ECF No. 19).

A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted).

The ALJ formulated the following RFC:

> After careful consideration of the entire record, the undersigned finds that since the application date, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she: can occasionally climb stairs and ramps, stoop, kneel, balance, crouch, and crawl; can never climb ladders, ropes, or scaffolds; must avoid concentrated exposure to hazards including dangerous moving machinery, uneven terrain, and unprotected

heights; must avoid concentrated exposure to extreme cold, vibrations, and environmental irritants such as dust, fumes, gases, odors, and poor ventilation; and can do simple routine repetitive tasks involving occasional contact with coworkers, supervisors and the general public.

(A.R. 22).

Plaintiff argues that this RFC is deficient because the ALJ failed to include restrictions based on her subjective complaints regarding her ability to maintain regular work attendance due to fibromyalgia-related flareups.

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

However, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995); *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Accordingly, our next task is to determine whether the ALJ's adverse credibility finding of Carmickle's testimony is supported by substantial evidence under the clear-and-convincing standard.").

As to Plaintiff's subjective complaints, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 23). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by

substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

In formulating the RFC, the ALJ noted Plaintiff's subjective complaints as follows:

> The claimant testified that she is disabled due to fibromyalgia, rheumatoid arthritis, herniated discs, and migraines. In the morning she has difficulty getting out of bed. . . . Various treatment modalities for her back pain were unsuccessful. Her back pain is more constant now. A typical pain severity level for her is a 9 on a scale from 0 to 10. She needs a walker now and fears she will fall. She can stand for a maximum of 15 minutes. She can walk maybe from her living room to her bedroom without her walker. It takes her 10 minutes to walk just from her bedroom to her living room. She cannot tolerate more than 10 to15 minutes without pain or needing to change positions. She cannot tolerate more than 5lbs of lifting and carrying. She has had her walker for a few years. She uses it a lot since the preceding year. Her fibromyalgia impacts her lower back, elbows, wrists, knees, and ankles. Her wrists swell and she has a constant ache. She has difficulty holding things and she will drop things. She cannot lift a regular coffee cup anymore. Some activities she is limited to 20-30 minutes. Other activities only 10 minutes. She is limited to an hour of activities overall during a day. She has to spend 2 or 2 and a half hours reclining during the day.

(A.R. 22).

Thereafter, the ALJ provided a summary of the medical record organized by exhibit number. Within this recitation, the ALJ noted records that would reasonably undercut Plaintiff's subjective complaints. For example, in Exhibit 4, the ALJ acknowledged Plaintiff's reported history of fibromyalgia but noted that "recent laboratories were all within normal limits, examination was unremarkable, and the claimant did not appear in any distress." (A.R. 23). The ALJ noted in Exhibit 9F that Plaintiff: "was seen in January 2021, with a flareup as she was out of refills. She had increased joint pains and fatigue, refills given labs ordered and feels better now, however she still has significant pain in her joints specially her hands." (A.R. 24, quoting A.R. 714). Concerning this record, the ALJ stated, "However, interim laboratory testing was within normal limits. Examination revealed swelling of her hands and fingers with slightly reduced grip, swelling of her ankles and warmth felt on multiple joints, though this was in telemedicine format. In any case, compliance was 'stressed again.'" (A.R. 24). For Exhibit 10F, the ALJ observed as follows: "Examination was unremarkable. She was in no apparent distress. There is no mention that she appeared fatigued. Instead, she appeared 'comfortable, calm, and relaxed.' There is no mention that her hands or ankles appeared swollen. There is no mention of

1    joint warmth or reduced grip strength." (A.R. 24; citing A.R. 738-40).

2         In discussing pain management records in Exhibit 16F, the ALJ acknowledged that
3    Plaintiff complained, among other things, of weakness, fatigue, and muscle pain and that she
4    reported relying on a walker. While the ALJ noted some abnormal findings, the ALJ also noted
5    that there was "no record of the claimant returning to this or other pain management sources
6    thereafter." (A.R. 26). Further, the ALJ noted an earlier MRI that "showed largely mild findings."
7    (A.R. 26). Likewise, the ALJ noted normal findings as to Exhibits 17F and 19F, including that
8    Plaintiff "walked with a normal gait and without assistive devices," that "[m]otor strength here
9    was notably 5/5 throughout," that "there [were] none of the joint findings discussed in the
10   rheumatology telemedicine or 'virtual' joint examination previously discussed," and that an
11   "examination specifically stated no swelling or deformity, no joint tenderness, and full range of
12   motion of all extremities." (A.R. 26).

13        After summarizing the medical record, the ALJ provided an analysis of the record
14   evidence:

> The above records support a reduction to modified light exertion with postural and environmental limitations. No further limitations are supported by the record which shows: mostly mild findings on imaging of the lumbar spine; only episodically particularly notable signs related to the lumbar spine or SI joints; no electrodiagnostic or other clinical objective evidence of a peripheral neuropathy since before the application date; episodic rheumatology findings on "virtual" joint examination that were not seen elsewhere in other source in-person visits before or after those rheumatology records; no sign of distress or observation that the claimant appeared fatigued anywhere in the record, even at an emergency visit that was reportedly secondary to emergency level low back pain; and little to no development for any physical condition since November 2021, when the claimant had a normal physical examination. It is also notable that at the last in-person examination with a pain management source, the claimant reported being dependent on a walker, but the record invariably showed a normal gait since, with the claimant even having intact heel and toe walking at the last primary care visit. It is also notable that even at the last rheumatology visit, the claimant had reported improved symptoms, there were no "virtual" joint exam findings described, and her symptoms were then attributed to fibromyalgia rather than rheumatoid arthritis. Even with the apparent previous "virtual" joint exam findings, the laboratory panels had not actually been consistent with ongoing inflammation, which would not seem to be consistent with the ongoing inflammation apparently seen via "virtual" joint examination. As for the fibromyalgia, the most seen objectively was

> some unspecified related tender points. There is no record of the claimant returning to rheumatology for greater treatment since she was placed on Cymbalta back in September 2021.
>
> . . . .
>
> The above records are therefore inconsistent with the claimant's statements and the third-party statements (Ex. 21E) as to the intensity, persistence, and limiting effects of her physical and psychiatric symptoms. The claimant's somewhat extreme testimony was particularly out of proportion with what the record shows. Of particular note is the testimony as it concerns the use of the walker even to ambulate from to room within her house; yet the record invariably reflects a normal gait. Again, the above records seem to suggest either episodic flare-ups of rheumatological and spine symptoms or that they were well managed with medications or wellmanaged since a 2021 course of injections- particularly in the absence of new diagnostic imaging, laboratory inflammatory abnormalities, and new developments since a rather normal objective picture in November 2021. The record therefore does not support less than light work.

(A.R. 28).

Such discussion shows that the ALJ properly considered Plaintiff's complaints in formulating the RFC but ultimately did not find them to cause disabling symptoms, generally because there was a lack of objective medical support for Plaintiff's complaints and because the medical record was inconsistent with her complaints. Such reasoning is valid.

First, even though the lack of supporting evidence cannot be the sole basis to discount testimony, it can be a factor. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). As the ALJ noted there was simply a lack of objective evidence for Plaintiff's "somewhat extreme testimony," for example, her statement that she needed a walker to move about within her house. (A.R. 28).

Second, the ALJ properly relied on evidence inconsistent with disability to discount Plaintiff's complaints, *e.g.*, his daily activities and normal medical examinations. *See Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."). For example, despite Plaintiff's extremely limited claims—including taking 10 minutes to walk from her room to the living room—the record generally

showed that Plaintiff had a normal gait and examination findings were often normal. (A.R. 28, 50). Additionally, the Court notes that the ALJ found persuasive the opinions of state agency medical consultants who limited Plaintiff to light work, with the ALJ ultimately finding Plaintiff capable of light work in the RFC. (A.R. 21, 29, 85, 151). Moreover, the Court finds it worth noting that the Court found partially persuasive the opinion of a psychologist who opined that Plaintiff was only mildly impaired in her ability to maintain regular attendance in the workplace. (A.R. 24, 27, 710).

In short, because the ALJ properly considered Plaintiff's subjective complaints in formulating the RFC, the Court does not find any error.

## II. CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. The Clerk of Court is directed to enter judgment in favor of the Commissioner of Social Security and to close this case.

IT IS SO ORDERED.

Dated: **June 26, 2024**                    /s/ Erica P. Grosjean
                                             UNITED STATES MAGISTRATE JUDGE